UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL D. VANCE,

        Petitioner,

                         CASE NO. 09-CV-11368
v.                          HON. GEORGE CARAM STEEH

PAUL KLEE,

        Respondent.
_____/

## OPINION AND ORDER ON REMAND DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS

      Michael D. Vance, ("Petitioner"), confined at the Parnall Correctional Facility in Jackson, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction for seven counts of first-degree criminal sexual conduct, M.C.L.A. 750.520b(1)(a); and three counts of second-degree criminal sexual conduct, M.C.L.A. 750.520c(1)(a). For the reasons stated below, the petition for writ of habeas corpus is **DENIED WITH PREJUDICE.**

## I. Background

Petitioner was charged with numerous counts of criminal sexual conduct in Oakland County Circuit Court Case # 03-193604-FC and was separately charged with one count of second-degree criminal sexual conduct in Oakland County Circuit Court Case # 03-192752-FH. The judge ordered these two cases consolidated for a single trial.

B.K. [1] testified that petitioner was her mother's boyfriend and lived with her and her mother in an apartment. B.K. was born on November 27, 1991. B.K. testified that during a two week period when she was nine years old, petitioner woke her up in the middle of the night, took her to the bathroom, and forced her to perform fellatio on him while petitioner sat on the toilet and the victim sat on the bathroom floor. (Tr. 6/8/2004, pp. 115-26). After the two-week period, B.K. wrote a note to her mother to inform her about the sexual assaults. B.K.'s mother requested that B.K. not tell her grandmother about the sexual assaults. (*Id.,* at pp. 128-30). Three years later, when B.K. was in middle school, she informed a friend, a school counselor, and personnel at Care House about the sexual assaults. (*Id.,* at pp. 131-32).

---

[1] Because both of the victims were minors at the time of the offenses, this Court will refer to them solely by their initials in order to preserve their privacy.

Cheryl Lynn Andreen had lived in another unit in the same apartment building that B.K., her mother, and petitioner had resided in. Andreen testified that one day in March of 2001, Andreen's roommate pounded on the door while she was taking a shower and asked her to go upstairs and speak with B.K.'s mother. Andreen went upstairs and noticed that B.K.'s mother was crying and B.K. appeared upset. B.K.'s mother handed Andreen a notebook which contained a note in a child's handwriting, stating "Mommy, Michael is making me put his penis in my mouth. Make him stop." When B.K.'s mother asked Andreen what she should do, Andreen suggested that she should call the police, but B.K.'s mother indicated that she would like to speak with petitioner first. Andreen suggested that B.K.'s mother at least speak with a friend of hers who was a lieutenant with the Lake Orion Police. Andreen subsequently called this lieutenant and asked for his advice. (*Id.,* pp. 169-75).

K.V. testified that she was a second-grader at the time of petitioner's trial. Petitioner was one of her mother's prior boyfriends. When K.V. was six years old, petitioner made her play "with his private", i.e. with what petitioner used to "go to the bathroom." K.V. testified that petitioner tried to make her use her mouth to stimulate him, but she did it with her hands.

K.V. testified that petitioner did this in an area with trees all around and a sign in the middle. K.V. subsequently told her mother about the assault after petitioner had moved out of their residence. (Tr. 6/9/2004, pp. 10-20).

K.V.'s mother confirmed that K.V. had informed her that petitioner sexually assaulted her. (*Id.,* pp. 30-35). On cross-examination, K.V.'s mother admitted that she was manic-depressive, that petitioner had broken up with her, that petitioner had obtained a personal protection order against her as a result of her trying to make contact with him, and that it was her ex-husband who reported the incident to the police on May 14, 2003, after she had told him what had happened. (*Id.,* pp. 39-41).

K.V.'s father testified that he wrote a statement for the police on May 6, 2003. In this statement, K.V.'s father indicated that K.V. informed him that petitioner had taken her to a park and asked her to touch him on his private parts with her mouth. K.V. told him that she did not want to do that and touched petitioner's genitals with her hands instead. K.V.'s father indicated that his daughter subsequently pointed out to him where the assault had taken place. (*Id.,* pp. 49-50, 54-55).

Petitioner's mother, Imogene Ruth Cochrane, testified for the defense. One night, B.K.'s mother pounded on her door and asked her to

"go get Michael with me."  B.K.'s mother informed Cochrane of B.K.'s allegations en route to pick up petitioner from his workplace.  When confronted with the allegations, petitioner told Cochrane and B.K.'s mother that "I've never heard anything like this before, I've never done anything like this before." (*Id.,* pp. 65-69).  A few days later, B.K.'s mother asked Cochrane to look at a letter that B.K. had allegedly written.  Cochrane testified that the handwriting did not look like it was done by a child and was not worded as a child would have worded it.  Cochrane told petitioner and B.K.'s mother after reviewing the letter that she did not know what to think of this because petitioner had a good military career.  B.K.'s mother called B.K. and asked her if this was her letter or not.  The trial court then sustained the prosecutor's objection on hearsay grounds and would not permit Cochrane to testify what B.K. had stated in her answer to her questions. (*Id.,* pp. 70-80).

Petitioner testified in his own behalf and denied sexually assaulting either victim. (Tr. 6/10/2004, pp. 31-32, 38, 45, 50-56, 60-61, 77-81).

Petitioner's convictions were affirmed on appeal. *People v. Vance,* Nos. 260292; 261914 (Mich.Ct.App. May 26, 2005); *lv. den.* 474 Mich. 1024, 708 N.W.2d 402 (2006).

Petitioner then filed a post-conviction motion for relief from judgment pursuant to M.C.R. 6.500, *et. Seq.,* which the trial court denied. *People v. Vance,* Nos. 03-192752-FH/03-193604-FC (Oakland County Circuit Court, March 8, 2007). The Michigan appellate courts denied petitioner leave to appeal. *People v. Vance,* No. 282797 (Mich.Ct.App. April 25, 2008); *lv. den.* 482 Mich. 1185, 758 N.W.2d 562 (2008).

In 2009, petitioner filed a petition for writ of habeas corpus. This Court granted petitioner a conditional writ of habeas corpus, finding that petitioner was denied his right to the effective assistance of appellate counsel with respect to his appeal of right with the Michigan Court of Appeals due to appellate counsel's failure to file an appeal of right in Case # 03-193604-FC and the trial court's failure to properly advise petitioner of his right to appeal in Case # 03-192752-FH. This Court ordered that petitioner's appeal of right be reinstated in both cases within sixty days of the Court's order and that the Michigan Court of Appeals undertake to appoint appellate counsel to represent petitioner. *See Vance v. Scutt*, No. 2:09-CV-11368; 2012 WL 666520 (E.D. Mich. Feb. 29, 2012).

The Sixth Circuit affirmed the conditional grant of a writ of habeas corpus with respect to Case No. 03-193604-FC and ordered that

petitioner's state appellate court rights be restored with respect to that case. The Sixth Circuit, however, reversed the grant of the writ in Case # 03-192752-FH and remanded for further proceedings consistent with the opinion. *Vance v. Scutt*, 573 F. App'x. 715 (6th Cir. 2014).

On remand, this Court held the petition in abeyance pending the completion of petitioner's appeal of right in Case No. 03-193604-FC. *Vance v. Scutt*, No. 2:09-CV-11368, 2014 WL 4192743 (E.D. Mich. Aug. 22, 2014).

Petitioner's conviction in Case No. 03-193604-FC was affirmed following his new appeal of right, although the case was remanded for re-sentencing because of an error in the scoring of the sentencing guidelines. *People v. Vance*, No. 323408, 2016 WL 3700301 (Mich. Ct. App. Jan. 26, 2016), *lv. den.* 499 Mich. 986, 882 N.W.2d 159 (2016). Petitioner was re-sentenced on September 1, 2016.

On October 13, 2016, this Court reopened the case and amended the caption but denied petitioner's motion for the appointment of counsel. The Court granted petitioner an extension of time to file an amended petition. On January 30, 2017, this Court granted petitioner's motion to amend his habeas petition and ordered that the amended petition be served upon

respondent. Respondent filed an answer on July 5, 2017 and petitioner filed a reply brief on August 28, 2017.

In his amended habeas petition, petitioner seeks relief on twelve separate grounds: (1) the trial judge erred in consolidating the two cases for trial, (2) the similar acts evidence was more prejudicial than probative and this denied petitioner his constitutional right to a fair trial, (3) petitioner was denied his constitutional right to present a defense because the trial court prevented him from impeaching the testimony of one of the complainants, (4) petitioner was denied a fair trial by introduction of two prior consistent statements when there was no claim of recent fabrication, (5) cumulative error, (6) the trial court erred in scoring OV-8, OV-9 and OV-11 of the Michigan Sentencing Guidelines, (7) petitioner was denied a fair trial because of prosecutorial misconduct, (8) The trial court erred in scoring 15 points for OV-10 of the Michigan Sentencing Guidelines, (9) the trial court violated the U.S. and Michigan Constitutions in sentencing petitioner to a prison term of 15 to 50 years on the CSC I convictions. (10) petitioner was denied his due process and right to a fair trial by the prosecutor's misconduct in improperly impugning petitioner's character and veracity and improperly vouching for the credibility of the complainants'

during closing argument and defense counsel was ineffective for failing to object, (11) petitioner was denied his constitutional right to due process of law and a fair trial when the court failed to state its reasons for denying trial counsel's motion for a directed verdict, and (12) the trial court committed reversible error when it assessed attorney fees in an amended order.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective

Death Penalty Act of 1996 (AEDPA), imposes the following standard of

review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not
> be granted with respect to any claim that was adjudicated on
> the merits in State court proceedings unless the adjudication of
> the claim–
>
> > (1)     resulted in a decision that was contrary to, or
> > involved an unreasonable application of, clearly
> > established Federal law, as determined by the
> > Supreme Court of the United States; or
> > (2)     resulted in a decision that was based on an
> > unreasonable determination of the facts in light of
> > the evidence presented in the State court
> > proceeding.

A decision of a state court is "contrary to" clearly established federal

law if the state court arrives at a conclusion opposite to that reached by the

Supreme Court on a question of law or if the state court decides a case

differently than the Supreme Court has on a set of materially

indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

An "unreasonable application" occurs when "a state court decision

unreasonably applies the law of [the Supreme Court] to the facts of a

prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ

simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).[2]

---

[2] Petitioner filed a petition with this Court, raising twelve claims. The Sixth Circuit has observed: "When a party comes to us with nine grounds for reversing the district court, that usually means there are none." *Fifth Third Mortgage v. Chicago Title Ins.*, 692 F.3d 507, 509 (6th Cir. 2012).

## III.  Discussion

### A.  Claims # 1 and # 2.   The misjoinder and "other acts evidence" claims.

In his first claim, petitioner contends that he was denied a fair trial when the trial court improperly consolidated petitioner's two separate criminal sexual conduct cases that involved two different victims into one trial.  In his related second claim, petitioner argues that the trial judge erred in ruling that evidence of petitioner's sexual assaults against each of the victims would be admissible under M.R.E. 404(b) at a trial involving the other victim, had each of the victims been tried separately.

The trial judge prior to trial granted the prosecution's motion to consolidate the two cases into one trial, on the ground that the cases involved two minor children that took place during "a somewhat similar time period."  The judge further noted that some of the police officers who would be testifying had been involved in both cases.  The judge further granted the prosecution's motion to introduce evidence of the separate sexual assault charges regarding each victim as "prior bad acts" evidence pursuant to M.R.E. 404(b), namely, to show that petitioner had a plan or scheme of meeting women who have small children, moving in with them, and molesting their children. (Tr. 1/7/1004, pp. 11-13).

Improper joinder does not, by itself, violate the federal constitution. *United States v. Lane,* 474 U.S. 438, 446, n. 8 (1986). The Supreme Court in *Lane* suggested in passing that misjoinder could rise " to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *Id.* The Sixth Circuit noted that this language in *Lane* concerning a court's failure to sever criminal charges is simply dicta and thus not clearly established federal law. See *Mayfield v. Morrow,* 528 F. App'x. 538, 541-42 (6th Cir. 2013). Because "'clearly established Federal law' for purposes of § 2254(d)(1) refers to 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions[.],'" *Id.* (quoting *Williams v. Taylor*, 529 U.S. at 412), the Sixth Circuit concluded that the habeas petitioner could not rely on *Lane* to obtain habeas relief on his claim that he had been deprived of his right to a fair trial when the judge denied his motion to sever different rape charges. *Id.* The Ninth Circuit has likewise held that a habeas petitioner could not rely on the Supreme Court's dicta in *Lane* to obtain habeas relief on an improper misjoinder claim, particularly where that dicta was merely mentioned as a comment in a footnote of the opinion. See *Collins v. Runnels*, 603 F.3d 1127, 1132 (9th Cir. 2010). Another judge in this district

indicated that he had "found no Supreme Court cases holding that a defendant in a criminal case has a constitutional right to a separate trial on each of the charges against him." *Rodriguez v. Jones*, 625 F. Supp. 2d 552, 560-61 (E.D. Mich. 2009).

Given the lack of holdings by the Supreme Court on the issue of whether a state court violates a habeas petitioner's due process rights by joining together unrelated criminal charges in a single trial, the Michigan Court of Appeals' rejection of petitioner's improper joinder claim was not an unreasonable application of clearly established federal law. See *Wright v. Van Patten,* 552 U.S. 120, 126 (2008); *Carey v. Musladin,* 549 U.S. 70, 77 ( 2006); *See also Comaduran v. Clark,* 452 F. App'x. 728, 728-29 (9th Cir. 2011).

Moreover, such claims have typically been rejected by the Sixth Circuit even on direct review of federal criminal convictions.  The Sixth Circuit held that to establish prejudice from joinder, a defendant must point to specific evidence that the joinder was prejudicial and "an unproven assertion is not compelling evidence of actual prejudice." *U.S. v. Saadey*, 393 F. 3d 669, 679 (6th Cir. 2005).  A jury is presumed capable of considering each criminal count separately and any prejudice arising from

trial of joined offenses may be cured by limiting instructions. *U.S. v. Cope*, 312 F. 3d 757, 781 (6th Cir. 2002). "Error based on misjoinder is almost always harmless where...the trial court issues a careful limiting instruction to the jury on the issue of possible prejudice resulting from the joinder." *U.S. v. Cody*, 498 F. 3d 582, 587 (6th Cir. 2007).

In the present case, it was not fundamentally unfair to join the different charges against petitioner in a single trial because " joinder was an efficient use of resources." *Rodriguez v. Jones*, 625 F. Supp. 2d at 561; See also *Conte v. Cardwell*, 475 F. 2d 698, 700 (6th Cir. 1973) (participation by state habeas corpus petitioner in successive prison riots in the same institution separated in time by less than two months were sufficient circumstances to permit joinder of offenses in an indictment and in a trial without violation of due process.).

Petitioner was also not prejudiced by the joinder of the charges, because the Michigan Court of Appeals indicated that much of the same evidence involving the two separate cases would have been admissible against petitioner pursuant to M.R.E. 404(b) at separate trials. *People v. Vance,* 2016 WL 370030, at * 2. Because much of the same evidence would have been admitted against petitioner at separate trials, petitioner

was not prejudiced by the joinder of the charges in this case. See *LaMar v. Houk,* 798 F.3d 405, 428 (6th Cir. 2015), *U.S. v. Jacobs,* 244 F. 3d 503, 507 (6th Cir. 2001). Petitioner is not entitled to habeas relief because he failed to identify which evidence that was admitted at his joint trial would have been inadmissible if he had been tried separately with respect to each set of charges. *LaMar*, 798 F. 3d at 428. Moreover, the trial court gave the jurors a cautionary instruction, which advised them that the fact that petitioner was charged with more than one offense was not evidence of his guilt and that they could not use this evidence to determine that he was a bad person or that he was likely to commit these crimes, but only for the limited purpose of deciding whether or not petitioner acted purposefully or that petitioner had used a scheme, plan, or system that he had used before or since. (Tr. 6/10/2004, p. 119). The trial court's cautionary instruction adequately cured any possible prejudice from the joinder of the separate charges at one trial. *Jacobs,* 244 F. 3d at 507. Petitioner is not entitled to relief on his first claim.

In his second claim, petitioner argues that the trial court erred in admitting into evidence prior bad acts evidence against him in violation of M.R.E. 404(b).

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.*  Errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000).

Petitioner's claim that the state court violated M.R.E. 404(b) by admitting "other acts" evidence at his trial would not entitle him to habeas relief because this claim is non-cognizable on habeas review. *See Bey v. Bagley,* 500 F 3d 514, 519 (6th Cir. 2007); *Estelle,* 502 U.S. at 72 (Supreme Court's habeas powers did not permit Court to reverse state court conviction based on their belief that the state trial judge erred in ruling that prior injury evidence was admissible as bad acts evidence under California law).  The admission of this "other acts" evidence against petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity

evidence in the form of "prior bad acts" evidence. *See Bugh v. Mitchell,* 329 F. 3d 496, 512 (6th Cir. 2003). Petitioner is not entitled to habeas relief on his first or second claims.

### B. Claim # 3. The right to present a defense claim.

Petitioner next contends that he was denied his right to present a defense when the trial judge refused to permit petitioner's mother Imogene Ruth Cochrane to testify that B.K. told her that she was in the upper level of her bunk bed when petitioner abused her. Petitioner claims that this testimony was admissible to impeach B.K., who initially testified that she did not tell Cochrane that she was in the bunk bed, but then testified that she did not remember the conversation with Cochrane. The trial judge excluded the testimony on the grounds that it was hearsay.

Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he or she also has the right to present his or her own witnesses to establish a defense. This right is a fundamental element of the due process of law. *Washington v. Texas*, 388 U.S. 14, 19 (1967); *See also Crane v. Kentucky,* 476 U.S. 683, 690 (1986)("whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation

clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'")(internal citations omitted). However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996). The Supreme Court, in fact, has indicated its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." *Crane,* 476 U.S. at 689. The Supreme Court gives trial court judges "wide latitude" to exclude evidence that is repetitive, marginally relevant, or that poses a risk of harassment, prejudice, or confusion of the issues. *Id.* (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986)).

The Michigan Court of Appeals agreed that the trial court erred in excluding Cochrane's testimony, but found the error to be harmless:

> Another witness, Cheryl Andreen, testified that she wrote in her statement to the police that MK (sic) "indicated" that the abuse occurred when she was in the upper bunk bed in her bedroom. Andreen also testified that she was never told that the abuse occurred in the bathroom. Andreen's testimony regarding BK's prior inconsistent statement impeached BK's testimony denying that she told Andreen about the bunk bed. Although Andreen's testimony did not specifically impeach BK's testimony that she could not remember her statements to Cochrane, it fulfilled the same purpose of Cochrane's excluded testimony, with the

advantage that Andreen had no familial bias in defendant's favor.  Consequently, it is not more probable than not that the outcome would have been different if the jury had heard the same testimony from Cochrane.  Therefore, the error was harmless.

*People v. Vance*, 2016 WL 370030, at * 7.

In the present case, the trial court's ruling did not deprive petitioner of a fundamentally fair trial.  Although the trial judge did not allow Ms. Cochrane to testify about B.K.'s prior inconsistent statement, Ms. Andreen was permitted to testify that she wrote in her statement to the police that B.K. informed Andreen that the abuse occurred when B.K. was in the upper bunk bed in her bedroom.  Andreen also testified that B.K. never told her that the sexual abuse occurred in the bathroom.  The trial court's exclusion of testimony from Ms. Cochrane about B.K.'s prior inconsistent statement was not so egregious that it effectively denied petitioner a fair trial, in light of the fact that petitioner was not completely barred from presenting testimony that B.K. had given prior inconsistent statements concerning where the sexual assaults had taken place. *See Fleming v. Metrish*, 556 F.3d 520, 535-36 (6th Cir. 2009).  With the quantum of evidence on the defense theory in the record, this Court concludes that the petitioner was afforded "a meaningful opportunity to present a complete defense." *Allen v.*

*Howes,* 599 F. Supp. 2d 857, 873 (E.D. Mich. 2009)(citing *Crane,* 476 U.S. at 690 (citation and internal quotations omitted)).  Petitioner is not entitled to relief on his third claim.

### C.  Claim # 4.  The prior consistent statements claim.

Petitioner next contends that the trial court erred in permitting the prosecutor to introduce out of court statements made by the victims to other witnesses as prior consistent statements, because there were no allegations of recent fabrication on the part of the victims.

The admission of a prior consistent statement when the declarant is available for cross-examination at trial, as was the case here, is not a question that rises to the level of a constitutional violation for purposes of habeas corpus relief. *See United States ex. rel. Gonzalez v. DeTella,* 918 F. Supp. 1214, 1222 (N.D. Ill. 1996)(internal citations omitted).  Indeed, there is no violation of the Sixth Amendment's Confrontation Clause when the witness testifies at trial and is subject to unrestricted cross-examination. *United States v. Owens,* 484 U.S. 554, 560 (1988).  As the Supreme Court has explained, "where the declarant is not absent, but is present to testify and to submit to cross examination, our cases, if anything, support the conclusion that the admission of his out of court statements does not

create a confrontation clause problem." *California v. Green,* 390 U.S. 149, 162 (1970). In this situation, "the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness' demeanor satisfy the constitutional requirements." *Owens,* 484 U.S. at 560 (internal citations omitted).

Petitioner's claim about the admission of the victims' prior consistent statements involves at best an error of state law that is not cognizable in federal habeas review. *See Regan v. Hoffner,* 209 F. Supp. 2d 703, 715 (E.D. Mich. 2002). Because the victims were subject to cross-examination at petitioner's trial, the admission of their out of court statements presented no Confrontation Clause problems. *Id.* Moreover, there is "no Supreme Court decision holding that the improper use of a witness's prior consistent statements violates the Constitution." *Drain v. Woods*, 902 F. Supp. 2d 1006, 1037 (E.D. Mich. 2012); *aff'd,* 595 F. App'x. 558, 561 (6th Cir. 2014). Because the admission of the prior consistent statements did not deprive the petitioner of a fundamentally fair trial, petitioner is not entitled to habeas relief on his fourth claim. *See Benton v. Booker,* 403 F. App'x. 984, 986 (6th Cir. 2010).

**D.  Claim # 5.  The cumulative error claim.**

Petitioner next contends that he is entitled to habeas relief because of  cumulative error.

The cumulative weight of alleged constitutional trial errors in a state prosecution does not warrant federal habeas relief; because there is no clearly established federal law permitting or requiring the cumulation of distinct constitutional claims to grant habeas relief. *Moore v. Parker,* 425 F.3d 250, 256 (6th Cir. 2005).  Therefore, petitioner is therefore not entitled to habeas relief on the grounds of cumulative error. *Id.*

**E.  Claims # 6, 8, 9, and 12.  The sentencing claims.**

The Court consolidates petitioner's four sentencing claims together for judicial clarity.

Petitioner in his sixth and eighth claims challenges the scoring of several offense variables under the Michigan Sentencing Guidelines.

Petitioner's claim that the state trial court misapplied the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review, because it is basically a state law claim. *See Howard v. White,* 76 F. App'x. 52, 53 (6th Cir. 2003); *See also Haskell v. Berghuis,* 695 F. Supp. 2d 574, 598 (E.D. Mich. 2010).  Errors in the application of state sentencing

guidelines cannot independently support habeas relief.  *See Kissner v. Palmer*, 826 F. 3d 898, 904 (6th Cir. 2016).  Petitioner's claim that the state trial court improperly departed above the sentencing guidelines range would not entitle him to habeas relief, because such a departure does not violate any of petitioner's federal due process rights.  *See Austin v. Jackson*, 213 F. 3d 298, 301 (6th Cir. 2000).

Petitioner in his ninth claim argues that the sentence of fifteen to fifty years that he received on the first-degree criminal sexual conduct convictions was cruel and unusual punishment.

A sentence imposed within the statutory limits is not generally subject to habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948);  The offense of first-degree criminal sexual conduct is punishable by up to life in prison.  Petitioner's sentence of fifteen to fifty years was within the statutory maximum for the first-degree criminal sexual conduct charges.  A sentence within the statutory maximum set by statute does not normally constitute cruel and unusual punishment. *Austin v. Jackson*, 213 F. 3d at 302.

A habeas petitioner who seeks to challenge the severity of a prison sentence on Eight Amendment grounds faces a formidable challenge.  He or she may obtain relief only by demonstrating that a state court decision

contravened or misapplied "clearly established" Supreme Court precedent. However, the Supreme Court has acknowledged "that our precedents in this area have not been a model of clarity." *Lockyer v. Andrade,* 538 U.S. 63, 72 (2003). "Indeed, in determining whether a particular sentence for a term of years can violate the Eighth Amendment, we have not established a clear or consistent path for courts to follow." *Id.* Thus, the Supreme Court declared that the general applicability of the proportionality standard to term-of-years sentences was clearly established, but confessed a lack of clarity as to the factors lower courts should consider in making that determination. *Id.* The Supreme Court concluded that "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." *Id.*

In *Lockyer,* the Supreme Court reversed the Ninth Circuit's grant of a writ of habeas corpus on the ground that two twenty-five-year-to-life sentences imposed under California's "three strikes" law, where the triggering felony was the theft of $ 150 worth of video tapes, violated the Cruel and Unusual Punishment Clause of the Eighth Amendment. The

Supreme Court noted that the "thicket" created by its jurisprudence

consisted primarily of its decisions in *Solem v. Helm,* 463 US. 277 (1983),

*Harmelin v. Michigan*, 501 U.S. 957 (1991), and *Rummel v. Estelle*, 445

U.S. 263 (1980).  The California state court observed that the

proportionality rule set forth in *Solem* was cast into doubt by *Harmelin,* and

proceeded to analyze Andrade's sentence under the approach taken in

*Rummel,* where the Supreme Court rejected a claim that a life sentence

imposed under Texas' recidivist statute was grossly disproportionate to the

theft felonies that formed the predicate for the sentence.  The California

court concluded that Andrade's sentence was not disproportionate.  The

Supreme Court held that this decision was not contrary to or an objectively

unreasonable application of federal law that was clearly established by the

Supreme Court. *Lockyer,* 538 U.S. at 72-77.

A plurality of the Supreme Court held that the Eighth Amendment

does not require strict proportionality between the crime and sentence.

*Harmelin,* 501 U.S. at 965.  As the Supreme Court observed in *Lockyer,* it

is generally recognized after *Harmelin* that the Cruel and Unusual

Punishment Clause of the Eighth Amendment forbids only an extreme

disparity between crime and sentence, that is, sentences that are "grossly

disproportionate" to the crime. *Id.* at 1001 (Kennedy, J., concurring); *Coleman v. Mitchell,* 268 F. 3d 417, 453 (6th Cir. 2001)(citing *Coker v. Georgia,* 433 U.S. 584, 592 (1977)); *United States v. Hopper,* 941 F. 2d 419, 422 (6th Cir. 1991)).

"Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Rummel,* 445 U.S. at 272. Rummel was convicted of obtaining $ 120.75 by false pretenses, a crime punishable by at least two years, but not more than ten years in prison. He was sentenced as a recidivist to life imprisonment with the possibility of parole. His two prior felonies consisted of fraudulent use of a credit card to obtain $ 80 worth of goods and services, a felony punishable by two to ten years in prison; and passing a forged check for $ 28.36, a crime punishable by two to five years in prison. The Supreme Court held that Rummel's life sentence under the state recidivist statute did not constitute cruel and unusual punishment. In *Harmelin,* the Supreme Court upheld a life sentence without the possibility of parole for possession of more than 650 grams of cocaine for an offender with no prior felony convictions.

The Supreme Court overturned a life sentence in *Solem* on the

ground that it was significantly disproportionate to Helm's crime and therefore prohibited by the Eighth Amendment. However, Helm had been sentenced to life imprisonment *without* the possibility of parole for uttering a "no account" check for $ 100, and his prior felonies also were minor, nonviolent crimes. By contrast, the Supreme Court reaffirmed *Rummel* and found constitutionally sufficient a sentence of twenty-five years to life imposed upon a fifth felony conviction. *Ewing v. California,* 538 U.S. 11, 24-31 (2003).

In the present case, petitioner's sentence fell within the maximum sentence set by state law, and "a sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment.'" *United States v. Organek,* 65 F. 3d 60, 62 (6th Cir. 1995)(citation omitted)(quoted with approval in *Austin v. Jackson*, 213 F. 3d at 302); *Friday v. Pitcher,* 200 F. Supp. 2d 725, 744 (E.D. Mich. 2002). "As long as the sentence remains within the statutory limits, trial courts have historically been given wide discretion in determining 'the type and extent of punishment for convicted defendants.'" *Austin,* 213 F. 3d at 301 (quoting *Williams v. New York,* 337 U.S. 241, 245 (1949)).

In light of "the vagueness of the gross-disproportionality principle and

the admonition that the principle is "applicable only in the 'exceedingly rare' and 'extreme' case," this Court concludes that the state courts did not unreasonably apply clearly established law in rejecting petitioner's proportionality claim. See *Smith v. Howerton*, 509 F. App'x. 476, 484 (6th Cir. 2012)(internal quotations omitted). Moreover, petitioner's sentence of fifteen to fifty years for first-degree criminal sexual conduct was not disproportionate to the offense or to the offender. *See e.g. Stadler v. Curtin*, 682 F. Supp. 2d 807, 829-30 (E.D. Mich. 2010)(sentence of twenty-five to forty years for first degree criminal sexual conduct was not disproportionate).

To the extent that petitioner is arguing that the trial court failed to afford him individualized consideration of mitigating evidence on his behalf, this claim fails because the U.S. Supreme Court has limited its holding concerning mitigating evidence to capital cases. *Alvarado v. Hill,* 252 F.3d 1066, 1069 (9th Cir. 2001)(citing to *Harmelin v. Michigan,* 501 U.S. at 996). Because petitioner had no constitutional right to an individualized sentence, no constitutional error would occur if the state trial court failed to consider mitigating evidence on his behalf at sentencing. See Hastings v. Yukins, 194 F. Supp. 2d 659, 673 (E.D. Mich. 2002).

Petitioner further claims that the trial court judge failed to consider petitioner's rehabilitative potential when fashioning his sentence. Petitioner's claim that the trial court failed to consider his rehabilitative potential in fashioning his sentence is non-cognizable on federal habeas review. *See Grays v. Lafler,* 618 F. Supp. 2d 736, 749 (W.D. Mich. 2008). "There is no constitutional principle that prefers rehabilitation over deterrence and retribution as a goal of sentencing." *Fielding v. LeFevre*, 548 F. 2d 1102, 1108 (2nd Cir. 1977).   Petitioner is not entitled to relief on his ninth claim.

In his twelfth claim, petitioner contends that the trial court erred in ordering petitioner to reimburse the court for the cost of his court-appointed attorney.

Petitioner is unable to challenge the imposition of attorney fees by the trial court.  Where a habeas petitioner is not claiming the right to be released but is challenging the imposition of a fine or other costs, he or she may not bring a petition for writ of habeas corpus. *See United States v. Watroba*, 56 F. 3d 28, 29 (6th Cir. 1995).  This Court lacks subject matter over petitioner's claim that the state court unconstitutionally required him to pay court-appointed counsel's fees, because petitioner's claim does not

challenge his confinement. *See Washington v. McQuiggin,* 529 F. App'x.

766, 772–73 (6th Cir. 2013). Petitioner is not entitled to relief on his twelfth

claim.

### F.  Claims # 7 and # 10.  The prosecutorial misconduct/ineffective assistance of counsel claims.

Petitioner next contends he was denied a fair trial because of

prosecutorial misconduct. Petitioner further argues that counsel was

ineffective for failing to object to the misconduct.

"Claims of prosecutorial misconduct are reviewed deferentially on

habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir.

2004)(citing *Bowling v. Parker*, 344 F. 3d 487, 512 (6th Cir. 2003)). A

prosecutor's improper comments will be held to violate a criminal

defendant's constitutional rights only if they "'so infected the trial with

unfairness as to make the resulting conviction a denial of due process.'"

*Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v.*

*DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct will

thus form the basis for habeas relief only if the conduct was so egregious

as to render the entire trial fundamentally unfair based on the totality of the

circumstances. *Donnelly v. DeChristoforo*, 416 U.S. at 643-45. In order to

obtain habeas relief on a prosecutorial misconduct claim, a habeas

petitioner must show that the state court's rejection of his or her prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 567 U.S. 37, 48 (2012)(quoting *Harrington*, 562 U.S. at 103).

Petitioner first argues that the prosecutor committed misconduct by mentioning in her closing argument that the adults in B.K.'s life were "really messed up", pointing out that her mom kept living with petitioner, that the officer that was originally called did not report it, and that Andreen did not report it. Petitioner further points to the prosecutor's comments that the victims' respective mothers were "trouble", that they "were ripe for the picking", which is what petitioner did with them, but that the victims' mothers did not protect their children, which in turn was why they no longer had custody of the victims. Petitioner suggests that the prosecutor's remarks about the victims' mothers is not supported by the evidence.

It is improper for a prosecutor during closing arguments to bring to the jury any purported facts which have not been introduced into evidence and which are prejudicial; however, prosecutors must be given leeway to argue reasonable inferences from the evidence. *Byrd v. Collins*, 209 F. 3d

486, 535 (6th Cir. 2000).

In the present case, it was reasonable to infer from the evidence that the victims' mothers were dysfunctional and did not immediately report the sexual assaults to the police. It was also reasonable to infer from the evidence that petitioner sought out these two women so as to exploit their children.

Moreover, petitioner is not entitled to habeas relief on his claim, because the remarks were isolated and the evidence against the petitioner was strong. *See Macias v. Makowski,* 291 F. 3d 447, 453-54 (6th Cir. 2002); *Byrd,* 209 F. 3d at 536. Any prosecutorial misconduct was also ameliorated by the trial court's instruction that the lawyers' comments and statements were not evidence. (Tr. 6/10/2004, pp. 116-17). *See Hamblin v. Mitchell,* 354 F. 3d 482, 495 (6th Cir. 2003).

Petitioner further points to the prosecutor's comments about how difficult it was for the two victims to testify about their sexual experiences, but that under the circumstances they did "pretty good."

To the extent that petitioner is arguing that the prosecutor vouched for the victims by pointing out how well that they had testified under the circumstances, he would not be entitled to relief. A prosecutor may not

express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses, because such personal assurances of guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F. 3d 731, 737 (6th Cir. 1999)(internal citations omitted). However, a prosecutor is free to argue that the jury should arrive at a particular conclusion based upon the record evidence. *Id.* The test for improper vouching for a witness is whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility. *United States v. Causey*, 834 F. 2d 1277, 1283 (6th Cir. 1987). "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *See United States v. Francis,* 170 F. 3d 546, 550 (6th Cir. 1999)(internal citations omitted). It is worth noting that the Sixth Circuit has never granted habeas relief for improper vouching. *Byrd v. Collins,* 209 F.3d at 537 and n. 43. Even on direct appeal from a federal conviction, the Sixth Circuit has held that to

constitute reversible error, a prosecutor's alleged misconduct of arguing his personal belief, in a witness' credibility or in a defendant's guilt, must be flagrant and not isolated. *See United States v. Humphrey,* 287 F. 3d 422, 433 (6th Cir. 2002).

Petitioner is not entitled to habeas relief on this claim because the prosecutor's comments were brief and isolated.  An isolated instance of vouching does not make a state trial so constitutionally infirm so as to justify federal habeas relief. *See e.g. Joseph v. Coyle,* 469 F. 3d 441, 474 (6th Cir. 2006).  Secondly, even if this statements amounted to improper vouching, it did not rise to the level of a due process violation necessary for federal habeas relief, because the sizeable amount of evidence offered by the state against petitioner made it unlikely that the jury was misled by this brief statement. *See Wilson v. Mitchell,* 250 F. 3d 388, 398 (6th Cir. 2001). Lastly, the jury was instructed that the lawyers' statements and arguments were not evidence.  This instruction by the court cured any prejudice that may have arisen from any improper vouching. *Byrd,* 209 F.3d at 537.

Petitioner further appears to argue that the prosecutor committed misconduct by introducing prior bad acts evidence against him, in violation of M.R.E. 404(b).

Although petitioner alleges prosecutorial misconduct, his claim "amounts in the end to a challenge to the trial court's decision to allow the introduction of this evidence." *Webb v. Mitchell*, 586 F. 3d 383, 397 (6th Cir. 2009). "A prosecutor may rely in good faith on evidentiary rulings made by the state trial judge and make arguments in reliance on those rulings." *Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008). The trial judge concluded that this evidence was relevant and admissible. There was no violation of clearly established federal law for the prosecutor to rely on the trial judge's ruling in admitting this "other acts" evidence of petitioner's sexual assaults against the two different victims at petitioner's trial, regardless if the trial judge's ruling was correct, thus petitioner is not entitled to habeas relief on his claim. *See Key v. Rapelje*, 634 F. App'x. 141, 146–47 (6th Cir. 2015).

Petitioner also appears to argue that the prosecutor improperly denigrated his character and veracity in her closing argument. Petitioner points to the prosecutor's statement that petitioner "made up" an incident in which he caught KV watching a pornographic video, and her statement that petitioner testified to a "ridiculous" story to explain Cochrane's damaging testimony that petitioner went to the police station to admit guilt.

The Michigan Court of Appeals rejected the claim, finding that the prosecutor's remarks that petitioner was not credible did not imply any special knowledge, but instead urged the jury to evaluate petitioner's credibility based on the jurors' understanding of what was believable and what was not. The Michigan Court of Appeals further concluded that the prosecutor's characterization of petitioner's attempt to explain Cochrane's testimony about his police contact as "ridiculous" did not attack petitioner personally, but instead focused on the plausibility of his explanation. *Vance*, 2016 WL 370030, at * 13.

The prosecutor's comments, when viewed in context, indicate that the prosecutor based her comments on inferences from the evidence presented in court and not upon any personal knowledge. Because the prosecutor's comments about petitioner's credibility was based on the evidence presented in court, was only a small portion of the prosecutor's argument, and did not create the impression that the prosecutor knew of evidence not presented to the jury, the prosecutor's comments did not deprive petitioner of a fair trial. *See Cristini v. McKee*, 526 F. 3d at 902.

The Court will reject petitioner's related ineffective assistance of counsel claim. To show that he or she was denied the effective assistance

of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Second, the defendant must show that such performance prejudiced his defense. *Id*.

To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different. *Hinkle v. Randle,* 271 F. 3d 239, 245 (6th Cir. 2001). Because the Court has already determined that the prosecutor's remarks did not deprive petitioner of a fundamentally fair trial, petitioner is unable to establish that he was prejudiced by counsel's failure to object to these remarks. *Slagle v. Bagley,* 457 F. 3d 501, 528 (6th Cir. 2006). Petitioner is not entitled to habeas relief on his seventh and tenth claims.

**G. Claim # 11.  The failure to direct a verdict claim.**

Petitioner finally contends that the trial court committed error by failing to state any reasons for denying his motion for a directed verdict, in violation of M.C.R. 6.419(F).

In *King v. Trippett*, 27 F. App'x. 506 (6th Cir. 2001), the Sixth Circuit held that the state court's misapplication of state law in failing to grant the petitioner's motion for a directed verdict was not cognizable in a federal habeas corpus proceeding. *Id.,* at 510 (*citing Estelle*, 502 U.S. at 67-68). Thus, the trial court's alleged violation of M.C.R. 6.419(F) in failing to give reasons for denying petitioner's motion for a directed verdict does not entitle him to habeas relief.

## IV.  Conclusion

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability to petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve

encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *Myers v. Straub,* 159 F. Supp. 2d 621, 629 (E.D. Mich. 2001). The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Id.*

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the Petition for a Writ of Habeas Corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a Certificate of Appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to

appeal *in forma pauperis.*

Dated:  September 21, 2017

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
September 21, 2017, by electronic and/or ordinary mail and
also Michael Vance #501288, Parnall Correctional Facility,
1780 E. Parnall, Jackson, MI 49201.

s/Barbara Radke
Deputy Clerk